# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL MINING ASSOCIATION,

*Petitioner*,

v.

No.  23-1275

U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. EPA,

*Respondents.*

## PETITION FOR REVIEW

Pursuant to 42 U.S.C. § 7607(b)(1), Federal Rule of Appellate Procedure 15, and D.C. Circuit Rule 15, the National Mining Association ("NMA") files this petition for review of the United States Environmental Protection Agency's and Administrator Michael S. Reagan's published rulemaking titled "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States." 88 Fed. Reg. 49,295 (July 31, 2023).

The rulemaking challenged in this petition stays the effectiveness of federal implementation plans for 6 states, but fails to do so with respect to the other 17 states EPA previously included in the final rule purporting to implement the requirements of 42 U.S.C. § 7410(a)(2)(D)(i)(I) for the 2015 8-hour ozone national ambient air quality standards. *See* Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36,654 (June 5, 2023). That underlying rulemaking is the subject of numerous challenges before this Court consolidated in *Utah v. EPA*, No. 23-1157 (D.C. Cir.). Because this petition for review and the cases consolidated in *Utah* are closely related, petitioner believes this petition should be consolidated with *Utah.*

This petition for review is timely filed, as it is filed within sixty days of the challenged action's publication in the Federal Register. *See* 42 U.S.C. § 7607(b)(1). This Court has jurisdiction for this action under 42 U.S.C. § 7607(b)(1). Moreover, in order to proceed expeditiously and avoid delay over venue disputes, NMA acquiesces to venue in this Court. *See Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996) (noting that

"§ 307(b)(1) is a venue provision, the application of which can be waived").

Respondents also assert in the challenged action that venue lies in this Court.

*See* 88 Fed. Reg. at 49,301.

Dated: September 29, 2023                    Respectfully submitted,

                                             /s/ *Michael B. Schon*

**Tawny Bridgeford**                         **Michael B. Schon**
*General Counsel &*                          LEHOTSKY KELLER COHN LLP
*Senior Vice President, Regulatory Affairs*  200 Massachusetts Ave. NW
NATIONAL MINING ASSOCIATION                  Washington, DC 20001
101 Constitution Ave. NW                     mike@lkcfirm.com
Suite 500 East                               (512) 693-8350
Washington, DC 20001
(202) 463-2629                               **Mithun Mansinghani**
tbridgeford@nma.org                          LEHOTSKY KELLER COHN LLP
                                             629 W. Main St.
                                             Oklahoma City, OK 73102
                                             mithun@lkcfirm.com
                                             (512) 693-8350

*Counsel for Petitioner National Mining Association*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL MINING ASSOCIATION,

       *Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY and MICHAEL S. REGAN,
Administrator, U.S. EPA,

       *Respondents.*

No. _____

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, the National Mining Association submits the following statement:

The National Mining Association ("NMA") is a nonprofit national trade association that represents the interest of the mining industry, including every major coal company operating in the United States. NMA has approximately 280 members, whose interests it represents before

Congress, the administration, federal agencies, the courts, and the media.

NMA is not a publicly held corporation and has no parent corporation. No

publicly held company has 10% or greater ownership interest in NMA.

Dated: September 29, 2023                     Respectfully submitted,

                                              */s/ Michael B. Schon*

**Tawny Bridgeford**                          **Michael B. Schon**
*General Counsel &*                           LEHOTSKY KELLER COHN LLP
*Senior Vice President, Regulatory Affairs*   200 Massachusetts Ave. NW
NATIONAL MINING ASSOCIATION                   Washington, DC 20001
101 Constitution Ave. NW                      mike@lkcfirm.com
Suite 500 East                                (512) 693-8350
Washington, DC 20001
(202) 463-2629
tbridgeford@nma.org                           **Mithun Mansinghani**
                                              LEHOTSKY KELLER COHN LLP
                                              629 W. Main St.
                                              Oklahoma City, OK 73102
                                              mithun@lkcfirm.com
                                              (512) 693-8350

*Counsel for Petitioner National Mining Association*

## CERTIFICATE OF SERVICE

On September 29, 2023, this petition for review and Rule 26.1 Disclosure Statement was served by certified mail, return receipt requested, on:

Hon. Michael S. Regan, Administrator
Office of the Administrator (1101A)
United States Environmental Protection Agency
1200 Pennsylvania Avenue NW
Washington, D.C. 20460

Hon. Merrick B. Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Correspondence Control Unit
Office of General Counsel (2310A)
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

*/s/ Michael B. Schon*
Michael B. Schon

Dated: July 19, 2023.

**Shira Perlmutter,**

*Register of Copyrights and Director of the U.S. Copyright Office.*

Approved by:

**Carla D. Hayden,**

*Librarian of Congress.*

[FR Doc. 2023–15941 Filed 7–28–23; 8:45 am]

**BILLING CODE 1410–30–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Parts 52 and 97**

**[EPA–HQ–OAR–2021–0668; FRL–8670.2–03–OAR]**

**Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Interim final rule; request for comment.

**SUMMARY:** The Environmental Protection Agency (EPA) is taking interim final action to stay, for emissions sources in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas only, the effectiveness of the federal implementation plan (FIP) requirements established to address the obligations of these and other states to mitigate interstate air pollution with respect to the 2015 national ambient air quality standards (NAAQS) for ozone (the Good Neighbor Plan). The EPA is also revising certain other regulations to ensure that sources in these states will continue to be subject to previously established requirements to mitigate interstate air pollution with respect to other ozone NAAQS while the Good Neighbor Plan's requirements are stayed. These revisions will also ensure that the stay is limited to requirements for which the EPA does not currently have authority to implement a FIP pending judicial review. The stay and the associated revisions to other regulations are being issued in response to judicial orders that partially stay, pending judicial review, a separate, earlier EPA action which disapproved certain state implementation plan (SIP) revisions submitted by these and other states. Finally, for states for which the Good Neighbor Plan's requirements are not being stayed, the EPA is revising three near-term deadlines that are incorrect as published in the Good Neighbor Plan.

**DATES:** This interim final rule is effective on August 4, 2023. Comments

on this rule must be received on or before August 30, 2023.

**ADDRESSES:** You may send comments, identified by Docket ID No. EPA–HQ–OAR–2021–0668, by any of the following methods:

• *Federal eRulemaking portal:* https://www.regulations.gov (our preferred method). Follow the online instructions for submitting comments.

• *Mail:* U.S. Environmental Protection Agency, EPA Docket Center, Air and Radiation Docket, Mail Code 28221T, 1200 Pennsylvania Avenue NW, Washington, DC 20460.

• *Hand delivery or courier:* EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operations are 8:30 a.m.–4:30 p.m., Monday–Friday (except federal holidays).

Comments received may be posted without change to *https://www.regulations.gov,* including any personal information provided. For detailed instructions on sending comments, see the "Public Participation" heading of the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** David Lifland, Clean Air Markets Division, Office of Atmospheric Protection, Office of Air and Radiation, U.S. Environmental Protection Agency, Mail Code 6204A, 1200 Pennsylvania Avenue NW, Washington, DC 20460; telephone: 202–343–9151; email: *lifland.david@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. General**

*A. Public Participation*

Submit your written comments, identified by Docket ID No. EPA–HQ–OAR–2021–0668, at *https://www.regulations.gov* (our preferred method), or by the other methods identified in the **ADDRESSES** section. Once submitted, comments cannot be edited or removed from the docket. The EPA may publish any comment received to its public docket. Do not submit to the EPA's docket at *https://www.regulations.gov* any information you consider to be Confidential Business Information (CBI), Proprietary Business Information (PBI), or other information whose disclosure is restricted by statute. Multimedia submissions (audio, video, etc.) must be accompanied by a written comment. The written comment is considered the official comment and should include discussion of all points you wish to make. The EPA will generally not consider comments or comment

contents located outside of the primary submission (*i.e.,* on the web, cloud, or other file sharing system). Please visit *https://www.epa.gov/dockets/commenting-epa-dockets* for additional submission methods; the full EPA public comment policy; information about CBI, PBI, or multimedia submissions; and general guidance on making effective comments.

*B. Potentially Affected Entities*

This action revises on an interim basis the Good Neighbor Plan, which applies to electricity generating units (EGUs) and non-EGU industrial sources. This action also revises other allowance trading program regulations that apply to EGUs but not to non-EGU industrial sources. The affected emissions sources are generally in the following industry groups:

| Industry group | North American Industry Classification System (NAICS) code |
|---|---|
| Fossil Fuel Electric Power Generation | 221112 |
| Pipeline Transportation of Natural Gas | 4862 |
| Cement and Concrete Product Manufacturing | 3273 |
| Iron and Steel Mills and Ferroalloy Manufacturing | 3311 |
| Glass and Glass Product Manufacturing | 3272 |
| Basic Chemical Manufacturing | 3251 |
| Petroleum and Coal Products Manufacturing | 3241 |
| Pulp, Paper, and Paperboard Mills | 3221 |
| Metal Ore Mining | 2122 |
| Solid Waste Combustors and Incinerators | 562213 |

The Good Neighbor Plan applies to emissions sources in Alabama, Arkansas, California, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Utah, Virginia, West Virginia, and Wisconsin. The portions of this action staying the Good Neighbor Plan's requirements and revising other allowance trading program regulations apply to sources in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas. The portions of this action revising certain near-term deadlines under the Good Neighbor Plan apply to emissions sources in the other listed states, for which the Good Neighbor Plan's requirements are not being stayed.

The information provided in this section on potentially affected entities is not intended to be exhaustive. If you have questions regarding the applicability of this action to a

particular entity, consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

### C. Statutory Authority

Statutory authority to issue the amendments finalized in this action is provided by the same Clean Air Act (CAA) provisions that provided authority to issue the regulations being amended: CAA section 110(a) and (c), 42 U.S.C. 7410(a) and (c) (SIP and FIP requirements, including requirements for mitigation of interstate air pollution), and CAA section 301, 42 U.S.C. 7601 (general rulemaking authority). Statutory authority for the rulemaking procedures followed in this action is provided by Administrative Procedure Act (APA) section 553, 5 U.S.C. 553.

## II. Regulatory Revisions

### A. Response to Stay Orders

1. Background and Summary

CAA section 110(a)(2)(D)(i)(I), also known as the "good neighbor" provision, requires each state's SIP to include provisions sufficient to "prohibit[ ], consistent with the provisions of this subchapter, any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will—(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." The EPA often refers to the emissions reduction requirements under this provision as "good neighbor obligations" and submissions addressing these requirements as "good neighbor SIPs."

CAA section 110(c)(1) requires the EPA Administrator to promulgate a FIP at any time within two years after the Administrator: (i) finds that a state has failed to make a required SIP submission; (ii) finds a SIP submission to be incomplete pursuant to CAA section 110(k)(1)(C); or (iii) disapproves a SIP submission. This obligation applies unless the state corrects the deficiency through a SIP revision that the Administrator approves before the FIP is promulgated.

On February 13, 2023, the EPA published a final action fully or partially disapproving good neighbor SIPs submitted by 21 states with respect to the 2015 ozone NAAQS (the SIP Disapproval action).[1] Consistent with the requirements of CAA section 110(c)(1), following the SIP Disapproval action, on March 15, 2023, the EPA

Administrator signed a separate final action promulgating a FIP, which is referred to here as the "Good Neighbor Plan" or the "Rule."[2] The Good Neighbor Plan requires EGUs and non-EGU industrial sources in the 21 states whose good neighbor SIPs the EPA had disapproved in the SIP Disapproval action (as well as two other states for which the EPA had previously made findings of failure to submit good neighbor SIPs) to reduce their emissions of nitrogen oxides ($NO_X$) during the May–September "ozone season" to address the states' good neighbor obligations with respect to the 2015 ozone NAAQS.[3] The Good Neighbor Plan was published in the **Federal Register** on June 5, 2023, and its requirements will be phased in over several years starting on the Rule's August 4, 2023, effective date.

To implement the required emissions reductions from EGUs, the Good Neighbor Plan uses an emissions allowance trading program. The EPA has previously established three successive allowance trading programs for EGUs' seasonal $NO_X$ emissions to address states' good neighbor obligations with respect to the 1997 and 2008 ozone NAAQS—referred to here as the CSAPR $NO_X$ Ozone Season "Group 1," "Group 2," and "Group 3" trading programs—in the Cross-State Air Pollution Rule (CSAPR),[4] the CSAPR Update,[5] and the Revised CSAPR Update,[6] respectively. The Good Neighbor Plan does not establish a new emissions trading program, but instead modifies the Group 3 trading program initially established in the Revised CSAPR Update and expands the program to apply to EGUs in the

additional states included in the Good Neighbor Plan.

In each of the successive rulemakings to address good neighbor obligations with respect to an ozone NAAQS, the EPA has coordinated compliance requirements by allowing the participation of a state's EGUs in the most recent seasonal $NO_X$ trading program to also satisfy any requirements to participate in a previous seasonal $NO_X$ trading program established to address the states' good neighbor obligations with respect to a less protective NAAQS.[7] Because of the EPA's coordination efforts, for 19 of the states covered by the Good Neighbor Plan as signed, including Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas, participation of the state's EGUs in the Group 3 trading program not only serves as the mechanism for partially addressing the states' good neighbor obligations with respect to the 2015 ozone NAAQS, but also serves as the mechanism for addressing the states' good neighbor obligations with respect to the 2008 ozone NAAQS.[8] For eight of the states, including Arkansas, Kentucky, Louisiana, Mississippi, and Missouri, participation of the states' EGUs in the Group 3 trading program serves as the mechanism for addressing the states' good neighbor obligations with respect to the 1997 ozone NAAQS as well.[9]

Petitioners challenging the SIP Disapproval action have filed motions in several courts for partial stays of that action with respect to the SIPs submitted by particular states. Subsequent to the Good Neighbor Plan's signature date, courts have granted some of these motions. On May 1 and June 8, 2023, the U.S. Court of Appeals for the Fifth Circuit issued orders staying the SIP Disapproval action with respect to Louisiana, Mississippi, and Texas pending judicial review on the merits.[10] On May 25 and 26, 2023, the U.S. Court of Appeals for the Eighth Circuit issued orders staying the SIP Disapproval action with respect to Arkansas and Missouri pending judicial review on the merits.[11] On May 31, 2023, the U.S. Court of Appeals for the Sixth Circuit issued an order administratively staying the SIP Disapproval action with respect

---

[1] Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 FR 9336 (February 13, 2023).

[2] Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 FR 36654 (June 5, 2023).

[3] See generally id. The Good Neighbor Plan's requirements for EGUs apply in 22 of the 23 covered states, while the requirements for non-EGU industrial sources apply in 20 of the 23 covered states.

[4] Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 FR 48208 (August 8, 2011). CSAPR addressed states' good neighbor obligations with respect to the 1997 ozone NAAQS, as well as the 1997 and 2006 NAAQS for fine particulate matter.

[5] Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 FR 74504 (October 26, 2016). The CSAPR Update addressed states' good neighbor obligations with respect to the 2008 ozone NAAQS.

[6] Revised Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 86 FR 23054 (April 30, 2021). The Revised CSAPR Update readdressed states' good neighbor obligations with respect to the 2008 ozone NAAQS in response to the remand of the CSAPR Update in *Wisconsin* v. *EPA*, 938 F.3d 303 (D.C. Cir. 2019).

[7] See, e.g., 81 FR 74509; 86 FR 23122.

[8] See 88 FR 36844.

[9] See id.

[10] Order, *Texas* v. *EPA*, No. 23–60069 (5th Cir. May 1, 2023); Order, *Texas* v. *EPA*, No. 23–60069 (5th Cir. June 8, 2023). The orders are available in the docket.

[11] Order, *Arkansas* v. *EPA*, No. 23–1320 (8th Cir. May 25, 2023); Order, *Missouri* v. *EPA*, No. 23–1719 (8th Cir. May 26, 2023); Order, *Union Electric Co.* v. *EPA*, No. 23–1751 (8th Cir. May 26, 2023). The orders are available in the docket.

to Kentucky pending review of Kentucky's stay motion.[12]

The EPA's authority under CAA section 110(c)(1) to establish the Good Neighbor Plan's FIP requirements for the sources in a given state is triggered by either the EPA's disapproval of the state's good neighbor SIP with respect to the 2015 ozone NAAQS or the EPA's finding of the state's failure to submit such a SIP. Accordingly, as a result of the orders partially staying the SIP Disapproval action, the EPA must act to ensure that the Good Neighbor Plan's requirements that were issued to address good neighbor obligations with respect to the 2015 ozone NAAQS and that apply to either EGUs or non-EGU industrial sources in each of the states for which a stay order has been issued will not take effect while the stay of the SIP Disapproval action as to that state remains in place. To ensure full compliance with the stay orders, the EPA is also staying these requirements for sources in Indian country located within the borders of a state covered by a stay order, including areas of Indian country not subject to the state's SIP authority.[13] However, as noted earlier in this section, the Group 3 trading program is also the mechanism to implement requirements previously established for EGUs in most of the covered states to address the states' good neighbor obligations with respect to the 2008 ozone NAAQS and, in some cases, the 1997 ozone NAAQS. The SIP Disapproval action was not a basis for the authority relied on by the EPA in the previous rulemakings to establish emissions reduction requirements with respect to the 2008 or 1997 ozone NAAQS, and the stay orders do not affect these pre-existing requirements. The EPA's authority for the rulemakings addressing the 2008 and 1997 ozone NAAQS remains in place. Implementing the stay orders therefore requires the EPA not only to stay the new requirements established for EGUs and non-EGU industrial sources in the Good Neighbor Plan to address their states' good neighbor obligations with respect

to the 2015 ozone NAAQS, but also to preserve status quo requirements established in previous rulemakings to address their states' good neighbor obligations with respect to the 2008 and 1997 ozone NAAQS.

Thus, the EPA in this action is revising the Good Neighbor Plan FIP requirements and the regulations for the Group 2 trading program to require the EGUs in each state covered by a stay order for the SIP Disapproval action to participate in the Group 2 trading program instead of the Group 3 trading program while the stay for that state remains in place. A small number of conforming revisions are also being made to the regulations for the Group 1 and Group 3 trading programs. Together, the revisions preserve the status quo by making the trading program requirements that will apply to the EGUs in each state for which the SIP Disapproval action has been stayed substantively identical to the trading program requirements that would have applied to the EGUs in that state if the state had not been covered by the Good Neighbor Plan. The revisions to the trading program regulations are summarized in the remainder of this section and are discussed in detail in section II.A.2 of this document.[14]

First, for EGUs in Arkansas, Mississippi, Missouri, and Texas, which before the Good Neighbor Plan were covered by the Group 2 trading program as promulgated in the CSAPR Update rather than the Group 3 trading program, the revisions in this action restore the state emissions budgets, unit-level allowance allocation provisions, and banked allowance holdings that would have been in effect for the EGUs in these states under the Group 2 trading program in the absence of the Good Neighbor Plan.

Second, for EGUs in Kentucky and Louisiana, which before the Good Neighbor Plan were already covered by the Group 3 trading program as promulgated in the Revised CSAPR Update, the revisions in this action modify the Group 2 and Group 3 trading program regulations so as to establish under the Group 2 trading program the state emissions budgets, unit-level allowance allocation provisions, and banked allowance holdings that would have been in effect for the EGUs in these states under the Group 3 trading program in the absence of the Good Neighbor Plan.

Finally, for EGUs in all states that will now be covered by the Group 2 trading

program, the revisions in this action establish two non-interchangeable subtypes of Group 2 allowances: CSAPR $NO_X$ Ozone Season Original Group 2 allowances and CSAPR $NO_X$ Ozone Season Expanded Group 2 allowances.[15] EGUs in Arkansas, Mississippi, Missouri, and Texas, which would have been covered by the Group 2 trading program in the absence of the Good Neighbor Plan, will use Original Group 2 allowances for compliance (as will EGUs in Iowa, Kansas, and Tennessee, which are not covered by the Good Neighbor Plan and remain in the Group 2 trading program). EGUs in Kentucky and Louisiana, which would have been covered by the Group 3 trading program in the absence of the Good Neighbor Plan, will use Expanded Group 2 allowances for compliance. The requirements to use different subtypes of Group 2 allowances will preserve the status quo distinction between these two sets of EGUs that already existed before the Good Neighbor Plan and that continues to exist with the stay of the Good Neighbor Plan as to these states, because the allowances that EGUs in Kentucky and Louisiana have used for compliance under the Group 3 trading program as promulgated in the Revised CSAPR Update are not interchangeable with the allowances that EGUs in the other states have used for compliance under the Group 2 trading program.

The amendments to the regulatory requirements for EGUs and non-EGU industrial sources that the EPA is finalizing in this action in response to the stay orders are being made on an interim basis and will remain in place while the judicial proceedings in which the stay orders were issued remain pending. After the courts have reached final determinations on the merits in those proceedings, the EPA will take further action consistent with the final determinations. At the time of this rulemaking, the EPA cannot predict how the Agency's future action may affect the amendments being finalized in this action.

## 2. Specific Regulatory Revisions

The regulatory revisions to 40 CFR part 52 that are being adopted in this action to implement the orders staying the SIP Disapproval action for non-EGU industrial sources in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas and Indian country

---

[12] Order, *Kentucky* v. *EPA*, No. 23–3216 (6th Cir. May 31, 2023), available in the docket.

[13] For sources in areas of Indian country not subject to the SIP authority of the states within whose borders the areas of Indian country are located, the EPA issued the Good Neighbor Plan's requirements not under authority of CAA section 110(c)(1) but under authority of CAA section 301(d)(4). *See* 88 FR 36690–92. However, because the EPA exercised its authority under CAA section 301(d)(4) only with respect to areas of Indian country within the borders of states for which requirements were being issued under CAA section 110(c)(1), *id.* at 36692, these areas of Indian country are indirectly implicated by the orders partially staying the SIP Disapproval action for the respective states.

[14] The EPA has included documents in the docket that show all the regulatory revisions being adopted in this action in redline-strikeout format.

[15] The non-interchangeability will be automatically enforced through the use of different codes for the two subtypes of Group 2 allowances in the EPA's Allowance Management System, where all allowance allocations, transfers, and deductions under the Group 2 trading program are recorded.

within the borders of those states include the addition of text at § 52.40(c)(4) to stay the effectiveness of the Good Neighbor Plan's requirements for non-EGU industrial sources at §§ 52.41 through 52.46 and the remainder of § 52.40 for states covered by stay orders and the addition of parallel text in the state-specific subparts of part 52 for each of the states.[16]

The regulatory revisions to 40 CFR parts 52 and 97 that are being adopted in this action to implement the orders staying the SIP Disapproval action for EGUs in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas and Indian country within the borders of those states while ensuring continued implementation of requirements established to address good neighbor obligations under rules promulgated before the Good Neighbor Plan include the following:

• The addition of text at § 52.38(b)(2)(iii)(D) to stay the effectiveness of the Good Neighbor Plan's requirements at § 52.38(b)(2)(iii)(A) and (B) for EGUs to participate in the enhanced Group 3 trading program for control periods after 2022 for states covered by stay orders, the addition of text at § 52.38(b)(2)(ii)(D) to require those EGUs to participate in the Group 2 trading program while that stay remains in place, and the addition of parallel text in the state-specific subparts of part 52 for each of the states.[17]

• The revision of text at § 52.38(b)(16)(ii)(B) to provide for continued administration by the EPA after 2022, for states covered by stay orders, of state Group 2 trading programs integrated with the federal Group 2 trading program under approved SIP revisions.[18]

• The revision and addition of text at § 97.802 to define ''Original'' and ''Expanded'' subtypes of CSAPR NOₓ Ozone Season Group 2 allowances, with conforming revisions and additions at §§ 97.502, 97.1002, 97.811(d) and (e), 97.821(e), 97.526(d) and (e), 97.826 through (f), and 52.38(b)(14).

• The revision of text at §§ 97.806(c), 97.824(a) and (d), and 97.825(a) to provide for EGUs in states covered by stay orders and covered by the Group 3 trading program before 2023 to use Expanded Group 2 allowances for compliance and for EGUs in other states covered by the Group 2 trading program to use Original Group 2 allowances for compliance, with conforming revisions at § 52.38(b)(14).

• The revision of text at § 97.810(a) and (b) to provide EGUs in states covered by stay orders the same amounts for state emissions budgets, new unit set-asides, Indian country new unit set-asides, and variability limits that would have applied under the Group 2 trading program or the Group 3 trading program, as applicable for the state, in the absence of the Good Neighbor Plan.

• The revision of text at § 97.811(a)(2) and § 97.821(e) to provide EGUs in states covered by stay orders the same unit-level allocation and recordation provisions that would have applied under the Group 2 trading program or the Group 3 trading program, as applicable for the state, in the absence of the Good Neighbor Plan.[19]

• The revision of text at §§ 97.830(b)(1) and 97.834(d)(2)(i) to provide EGUs in states that were covered by the Group 3 trading program before 2023 the same deadlines for commencement of monitoring and reporting activities that would have applied in the absence of the Good Neighbor Plan.

• The addition of text at § 97.1026(e) to provide for the conversion of banked 2021–2022 Group 3 allowances held by EGUs in states that were covered by the Group 3 trading program before 2023 into Expanded Group 2 allowances, with conforming revisions at §§ 97.502, 97.802, 97.1002, 97.824(c), and 52.38(b)(14).

• The revision of text at §§ 97.811(e)(1) and 97.826(e)(1) to exclude EGUs in states covered by stay orders from the Good Neighbor Plan's provisions converting banked 2017–2022 Original Group 2 allowances into

Group 3 allowances and recalling previously allocated 2023–2024 Original Group 2 allowances.

• The revision of text at §§ 97.816(c), 97.818(f), and 97.820(c)(1)(iv), (c)(2)(iv), and (c)(5)(vi) to include the transition of states from the Group 3 trading program to the Group 2 trading program in the provisions that allow the EPA to treat certain certifications, applications, and notices of delegation as valid despite the use of terminology intended for use under a different trading program.

• The revision of text at §§ 97.526(e) and 97.826(f) and the addition of text at § 97.1026(f) to include the transition of states from the Group 3 trading program to the Group 2 trading program in the provisions that specify when and how an EGU in a state that has moved between trading programs may use allowances from a later trading program to meet surrender requirements for past control periods under a previous trading program, with conforming revisions at § 52.38(b)(14).

• The revision of text at § 97.526(d)(2)(ii) and 97.826(d)(3) to include the conversion of Group 3 allowances to Expanded Group 2 allowances in the provisions that address future conversions of allowances that were allocated for past control periods under a given trading program to an EGU in a state no longer covered by that trading program, where the allowances would have been included in a previous conversion to a different type of allowances if the allocations had been recorded before the previous conversion took place.

*B. Deadline Corrections*

In addition to the regulatory revisions described in section II.A of this document that are being made on an interim basis in response to judicial stay orders, in this action the EPA is also permanently revising three near-term deadlines that are incorrect in the Good Neighbor Plan as published in the **Federal Register**. Unlike the revisions described in section II.A of this document, these revisions apply to emissions sources in the states whose coverage under the Good Neighbor Plan is not affected by a stay order.

The first deadline correction concerns a quarterly reporting deadline applicable to EGUs in states that were already covered by the Group 2 trading program or the Group 3 trading program before the 2023 ozone season. As explained in the Good Neighbor Plan preamble, these EGUs will participate in the revised Group 3 trading program for the entire 2023 ozone season, subject to transitional provisions ensuring that the only substantive new regulatory

---

[16] *See* §§ 52.184(b)(2) (Arkansas), 52.940(c)(2) (Kentucky), 52.984(e)(2) (Louisiana), 52.1284(b)(2) (Mississippi), 52.1326(c)(2) (Missouri), and 52.2283(e)(2) (Texas).

[17] *See* §§ 52.184(a)(6) (Arkansas), 52.940(b)(6) (Kentucky), 52.984(d)(6) (Louisiana), 52.1284(a)(6) (Mississippi), 52.1326(b)(6) (Missouri), and 52.2283(d)(6) (Texas).

[18] This revision ensures that Missouri's good neighbor obligations with respect to the 2008 and 1997 NAAQS can continue to be met through the participation of the state's EGUs in the state Group 2 trading program adopted by the state and included in the SIP revision that was approved by the EPA at 84 FR 66316 (December 4, 2019).

[19] For sources in states that were not covered by the Group 3 trading program before the Good Neighbor Plan, the applicable notice of data availability (NODA) referenced in revised § 97.811(a)(2)(ii) as identifying the unit-level allocations of Original Group 2 allowances to existing units will be the NODA published at 81 FR 67190 (September 30, 2016) to implement the CSAPR Update. For sources in states that were covered by the Group 3 trading program before the Good Neighbor Plan, the applicable NODA referenced in revised § 97.811(a)(2)(ii) as identifying the unit-level allocations of Expanded Group 2 allowances to existing units will be the NODA published at 86 FR 26719 (May 17, 2021) to implement the Revised CSAPR Update.

requirements in 2023—specifically, the emissions control stringencies reflected in the revised Group 3 trading program's state emissions budgets and assurance levels—will take effect only after the Rule's effective date.[20] The Group 3 trading program's deadline for EGUs to submit quarterly reports of emissions and operating data for the first two months of the May–September ozone season in 2023 would normally have been July 31, 2023 (the first business day at least 30 days after the end of the second calendar quarter), but the timing of publication in the **Federal Register** caused the Good Neighbor Plan's effective date to fall four days after this date, on August 4, 2023. Accordingly, the EPA is extending the deadline in 40 CFR 97.1034(d)(3) by which EGUs subject to the Group 3 trading program must submit quarterly reports for this calendar quarter to August 4, 2023.[21] Further, because the quarterly reports required under the Group 3 trading program are consolidated with the quarterly reports required under several other EPA programs, the EPA is also amending 40 CFR 97.1034(d)(4) to similarly extend these EGUs' reporting deadlines under the other programs.

The second deadline correction concerns a quarterly reporting deadline applicable to EGUs in states that were not already covered by the Group 2 trading program or the Group 3 trading program before the 2023 ozone season. EGUs in these states will begin to participate in the Group 3 trading program as of the Good Neighbor Plan's effective date, and the regulations as published in the Rule correctly provide that most of these EGUs will be subject to the program's monitoring and reporting requirements for emissions occurring on and after August 4, 2023.[22]

However, a separate regulatory provision incorrectly identifies the ending date of the first calendar quarter for which these EGUs must submit quarterly reports under the Group 3 trading program as June 30, 2023. The EPA is amending 40 CFR 97.1034(d)(2)(i)(C) to indicate the correct quarterly ending date of September 30, 2023. The deadline for EGUs to submit quarterly reports for this calendar quarter will be October 30, 2023.

The third deadline correction concerns a deadline for submission of initial notifications applicable to furnaces in the Glass and Glass Product Manufacturing industry that are subject to requirements under the Good Neighbor Plan. Because of a typographical error in the document submitted for publication in the **Federal Register**, the Rule as published incorrectly specifies a submission deadline of June 23, 2023 (the first business day at least 18 days after the Rule's publication date). The EPA is amending 40 CFR 52.44(j)(2) to specify the intended submission deadline of December 4, 2023 (the first business day at least *180* days after the Rule's publication date).

## III. Rulemaking Procedures and Findings of Good Cause

As noted in section I.C of this document, the EPA's authority for the rulemaking procedures followed in this action is provided by APA section 553.[23] In general, an agency issuing a rule under the procedures in APA section 553 must provide prior notice and an opportunity for public comment, but APA section 553(b)(B) includes an exemption from notice-and-comment requirements "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." This action is being issued as an interim final rule without prior notice or opportunity for public comment because the EPA finds that the APA "good cause" exemption

from notice-and-comment requirements applies here.

The EPA finds good cause to forgo notice-and-comment procedures because such procedures are both impracticable and unnecessary for this action. First, following notice-and-comment procedures is impracticable for the portions of this action responding to the stay orders because such procedures would require more time than is available. The earliest stay order to which the EPA must respond in this action was issued on May 1, 2023, just over three months before the Good Neighbor Plan's upcoming effective date on August 4, 2023, which is the date by which this action responding to the stay order must be effective. The most recent of the subsequent stay orders to which the EPA's action must also respond was issued less than two months before the Rule's upcoming effective date. The EPA does not consider even the maximum three-month period sufficient time in which to conduct a notice-and-comment rulemaking encompassing the time to, at a minimum, evaluate possible actions for responding to the stay orders, prepare and publish a proposal describing the action identified through that evaluation, wait for comments on the proposal, review the comments received, and prepare and publish a final rule and response to comments. It is not possible for all of these steps to be completed within a three-month period for this action.

Second, following notice-and-comment procedures is unnecessary for this action. With respect to the portions of this action that respond to the stay orders, the EPA has no discretion as to the regulatory revisions that stay the effectiveness of the Good Neighbor Plan's requirements for sources in the states covered by stay orders. While some superficial discretion exists concerning the specific design of the regulatory revisions that provide an alternate mechanism for EGUs in states covered by the stay orders to continue to address the states' good neighbor obligations with respect to the 2008 and 1997 NAAQS, no discretion exists as to the function of that design, which is to maintain the status quo by implementing requirements that are substantively identical to pre-existing requirements that would have continued to apply in the absence of the Good Neighbor Plan. The EPA's design for the regulatory revisions in this action accomplishes this function. Taking comment on the portions of the action that respond to the stay orders so as to allow the public to advocate for not staying the Good Neighbor Plan's requirements, not adopting regulatory

---

[20] *See* 88 FR 36775–76; 88 FR 36811–13.

[21] All the EGUs that are required under the Good Neighbor Plan to submit quarterly reports for the second calendar quarter of 2023 already participate in either the Group 2 trading program or the Group 3 trading program and therefore have already installed and certified the necessary monitoring systems. The data elements of the quarterly reports that these EGUs are required to submit under the Group 3 trading program for their ozone season emissions in 2023 are identical to the data elements of the quarterly reports that the EGUs were required to submit under the Group 2 trading program or Group 3 trading program for their ozone season emissions in 2022 and previous years.

[22] *See* 40 CFR 97.1030(b)(1)(iii). Most EGUs covered under the Good Neighbor Plan that do not already participate in the Group 2 trading program or the Group 3 trading program are already subject to closely related monitoring and reporting requirements under other EPA programs and consequently have already installed and certified the monitoring systems necessary to monitor and report under the Group 3 trading program. For the small number of EGUs in these states that have not already been required to install and certify the necessary monitoring systems under another EPA

program, the deadline to begin monitoring and reporting under the Group 3 trading program will be either January 31, 2024 (180 days after the Rule's effective date), for units that report on a year-round basis, or May 1, 2024, for units that report on an ozone season-only basis. *See* 40 CFR 97.1030(b)(1)(iv) and (b)(3).

[23] Under CAA section 307(d)(1)(B), the EPA's revision of a FIP under CAA section 110(c) would normally be subject to the rulemaking procedural requirements of CAA section 307(d), including notice-and-comment procedures, but CAA section 307(d) does not apply "in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of [APA section 553(b)]." CAA section 307(d)(1).

revisions needed to implement requirements that are substantively identical to the requirements that would have applied in the absence of the Good Neighbor Plan, or adopting superficially different regulatory revisions to accomplish the same function would serve no purpose and is therefore unnecessary.[24]

With respect to the portions of this action that correct deadlines, each of the deadlines that is incorrect as published in the Good Neighbor Plan precedes the Rule's actual effective date and therefore could not be implemented as published. In the cases of the two deadlines that were incorrect as published because of the timing of the Rule's publication, the amended deadlines of August 4, 2023, and September 30, 2023, are the earliest possible revised deadlines that are both feasible in light of the Good Neighbor Plan's actual effective date and also consistent with the normal timing and sequence of monitoring and reporting activities under the Group 3 trading program regulations. In the case of the deadline that was incorrect as published because of a typographical error, the amended deadline of December 4, 2023, is the same deadline that has already been published in parallel provisions of the Good Neighbor Plan's regulations for other non-EGU industrial sources.[25] Because both the need for the corrections and the specific corrections that should be made are clear, taking comment to allow the public to advocate for not correcting the deadlines or for making different corrections would serve no purpose and is therefore unnecessary.

The regulatory revisions made in this action will take effect on August 4, 2023, the effective date of the Good Neighbor Plan. In general, an agency issuing a rule under APA section 553 must provide for a period of at least 30 days between the rule's dates of publication and effectiveness, but APA section 553(d) includes several exceptions. Under APA section 553(d)(1), an exception applies to a rule that ''grants or recognizes an exemption or relieves a restriction.'' Because the portions of this action that stay the effectiveness of the Good Neighbor Plan's requirements for the sources in

certain states grant an exemption (on an interim basis while the stay remains in place), the normal 30-day minimum period between this action's dates of publication and effectiveness is not required. The EPA is making these portions of the action effective as of the Good Neighbor Plan's effective date to comply with the stay orders.

Under APA section 553(d)(3), the normal 30-day minimum period between a rule's dates of publication and effectiveness does not apply ''as otherwise provided by the agency for good cause found and published with the rule.'' With respect to the portions of this action that provide an alternate mechanism for EGUs in states covered by the stay orders to continue to address the states' good neighbor obligations under rules issued before the Good Neighbor Plan and the portions of this action that correct certain deadlines, the EPA finds good cause to make the regulatory revisions effective on August 4, 2023, the effective date of the Good Neighbor Plan, even though that date is less than 30 days after the publication date of this action, for the following reasons. First, the regulatory revisions that facilitate continued implementation of requirements addressing good neighbor obligations under previous rules benefit the public by avoiding the possibility that interruption of the requirements would cause air quality degradation. Second, both these regulatory revisions and the regulatory revisions that correct deadlines benefit the regulated community by clarifying the regulatory requirements that apply in light of the stay orders and the timing of publication of the Good Neighbor Plan. Finally, making the regulatory revisions effective less than 30 days after this action's publication date does not violate the purpose of the normal requirement for a 30-day minimum period, which is ''to give affected parties a reasonable time to adjust their behavior before the final rule takes effect.''[26] The regulatory revisions in this action facilitating continued implementation of previously applicable requirements impose no requirements on any source that differ substantively from the requirements that would have applied to that source in the absence of the Good Neighbor Plan, and the deadline corrections in this action extend the deadlines in the Rule as published. Thus, no affected party needs time to adjust its behavior in preparation for these regulatory revisions.

## IV. Request for Comment

As explained in section III of this document, the EPA finds good cause to take this interim final action without prior notice or opportunity for public comment. However, the EPA is providing an opportunity for comment on the content of the amendments. The EPA requests comment on this rule. The EPA is not reopening for comment any provisions of the Good Neighbor Plan, 40 CFR part 52, or 40 CFR part 97 other than the specific provisions that are expressly added or amended in this rule.

## V. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at *www.epa.gov/laws-regulations/ laws-and-executive-orders.*

### A. Executive Order 12866: Regulatory Planning and Review, as Amended by Executive Order 14094: Modernizing Regulatory Review

This action is not a significant regulatory action as defined in Executive Order 12866, as amended by Executive Order 14094, and was therefore not subject to a requirement for Executive Order 12866 review.

### B. Paperwork Reduction Act (PRA)

This action does not impose any new information collection burden under the Paperwork Reduction Act (PRA), 44 U.S.C. 3501 *et seq.* The Office of Management and Budget (OMB) has previously approved the information collection activities that will apply to the EGUs affected by this action and has assigned OMB control numbers 2060–0258 and 2060–0667. Additional information collection activities that will apply to EGUs and non-EGU industrial sources under the Good Neighbor Plan have been submitted to OMB for approval in conjunction with that rulemaking. This action makes no changes to the information collection activities under the previously approved information collection requests (ICRs) or the additional information collection activities for which approval has been requested in the Good Neighbor Plan's ICRs.

### C. Regulatory Flexibility Act (RFA)

This action is not subject to the Regulatory Flexibility Act (RFA), 5.U.S.C. 601–612. The RFA applies only to rules subject to notice-and-comment rulemaking requirements under the Administrative Procedure Act (APA), 5 U.S.C. 553, or any other statute. This rule is not subject to notice-and-comment requirements because the

---

[24] To illustrate, the EPA could in theory preserve the status quo for EGUs in Kentucky and Louisiana by promulgating an entire set of trading program regulations under 40 CFR part 97 replicating the entire set of Group 3 trading program regulations as promulgated in the Revised CSAPR Update without the subsequent revisions promulgated in the Good Neighbor Plan to address states' good neighbor obligations with respect to the 2015 ozone NAAQS. However, the outcome would be substantively identical to the approach the EPA is taking here.

[25] *See* 40 CFR 52.42(g)(2); 40 CFR 52.43(h)(2).

[26] *Omnipoint Corp.* v. *FCC,* 78 F.3d 620, 630 (D.C. Cir. 1996).

Agency has invoked the APA "good cause" exemption under 5 U.S.C. 553(b).

## D. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in the Unfunded Mandates Reform Act (UMRA), 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local, or tribal governments or the private sector. This action simply stays the effectiveness of certain regulatory requirements for certain sources on an interim basis in response to procedural court orders while ensuring that previously applicable regulatory requirements remain in effect.

## E. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

## F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments

This action does not have tribal implications as specified in Executive Order 13175. This action simply stays the effectiveness of certain regulatory requirements for certain sources on an interim basis in response to procedural court orders while ensuring that previously applicable regulatory requirements remain in effect. Thus, Executive Order 13175 does not apply to this action.

## G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2–202 of the Executive Order. This action responds to court orders issued by the U.S. Courts of Appeals for the Fifth, Sixth, and Eighth Circuits and the EPA lacks discretion to deviate from those orders. The EPA's assessment of health and safety risks for the action establishing the requirements that are being stayed is discussed in Chapter 5 of the regulatory impact analysis for the Good Neighbor Plan.[27]

## H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use

This action is not subject to Executive Order 13211 because it is not a significant regulatory action under Executive Order 12866.

## I. National Technology Transfer and Advancement Act (NTTAA)

This rulemaking does not involve technical standards.

## J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations

Executive Order 12898 (59 FR 7629, February 16, 1994) directs federal agencies, to the greatest extent practicable and permitted by law, to make environmental justice part of their mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of their programs, policies, and activities on minority populations (people of color and/or Indigenous peoples) and low-income populations.

This action responds to court orders issued by the U.S. Courts of Appeals for the Fifth, Sixth, and Eighth Circuits and the EPA lacks discretion to deviate from those orders. The EPA's assessment of environmental justice considerations for the action establishing the requirements that are being stayed is discussed in section VII of the Good Neighbor Plan preamble.[28]

## K. Congressional Review Act (CRA)

This action is subject to the Congressional Review Act (CRA), 5 U.S.C. 801–808, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. The CRA allows the issuing agency to make a rule effective sooner than otherwise provided by the CRA if the agency makes a good cause finding that notice and comment rulemaking procedures are impracticable, unnecessary, or contrary to the public interest (5 U.S.C. 808(2)). The EPA has made a good cause finding for this rule as discussed in section III of this document, including the basis for that finding.

## L. Judicial Review

CAA section 307(b)(1) governs judicial review of final actions by the EPA. This section provides, in part, that petitions for review must be filed in the U.S. Court of Appeals for the District of Columbia Circuit (D.C. Circuit): (i) when the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." For locally or regionally applicable final actions, the CAA reserves to the EPA complete discretion to decide whether to invoke the exception in (ii).[29]

This rulemaking is "nationally applicable" within the meaning of CAA section 307(b)(1). In this action, in response to court orders, the EPA is amending on an interim basis the Good Neighbor Plan,[30] which the EPA developed by applying a uniform legal interpretation and common, nationwide analytical methods to address the requirements of CAA section 110(a)(2)(D)(i)(I) concerning interstate transport of pollution (*i.e.,* "good neighbor" requirements) for the 2015 ozone NAAQS. Based on that nationwide analysis, the Good Neighbor Plan established FIP requirements for sources in 23 states located across eight EPA Regions and ten federal judicial circuits. Given that this action amends an action implementing the good neighbor requirements of CAA section 110(a)(2)(D)(i)(I) in a large number of states located across the country and given the interdependent nature of interstate pollution transport and the common core of knowledge and analysis involved in promulgating the FIP requirements, this is a "nationally applicable" action within the meaning of CAA section 307(b)(1).

In the alternative, to the extent a court finds this action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of

---

[27] *See* Regulatory Impact Analysis for the Final Federal Good Neighbor Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard (March 2023) at 197–257, available in the docket.

[28] *See* 88 FR 36844–46.

[29] *Sierra Club* v. *EPA,* 47 F.4th 738, 745 (D.C. Cir. 2022) ("EPA's decision whether to make and publish a finding of nationwide scope or effect is committed to the agency's discretion and thus is unreviewable"); *Texas* v. *EPA,* 983 F.3d 826, 834–35 (5th Cir. 2020).

[30] The Good Neighbor Plan is nationally applicable or based on a determination of nationwide scope or effect found and published by the EPA. *See* 88 FR 36859–60.

"nationwide scope or effect" within the meaning of CAA section 307(b)(1). In this action, in response to court orders, the EPA is amending on an interim basis the Good Neighbor Plan, an action in which the EPA interpreted and applied section 110(a)(2)(D)(i)(I) of the CAA for the 2015 ozone NAAQS based on a common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the continental United States. Based on that nationwide analysis, the Good Neighbor Plan established FIP requirements for sources in 23 states located across eight EPA Regions and ten federal judicial circuits. This action adjusts temporarily the scope and operation of the Good Neighbor Plan for six states in response to court orders, and also implements necessary measures to ensure the status quo is maintained with respect to existing obligations under previously issued regulations (that were themselves nationally applicable or based on a determination of nationwide scope or effect found and published by the EPA [31]). This action also adjusts certain deadlines for all states that remain covered by the Good Neighbor Plan.

The Administrator finds that, like the Good Neighbor Plan which it amends, this action is a matter on which national uniformity in judicial resolution of any petitions for review is desirable, to take advantage of the D.C. Circuit's administrative law expertise, and to facilitate the orderly development of the basic law under the Act. The Administrator also finds that consolidated review of this action in the D.C. Circuit will avoid piecemeal litigation in the regional circuits, further judicial economy, and eliminate the risk of inconsistent results for different states, and that a nationally consistent approach to the CAA's mandate concerning interstate transport of ozone pollution constitutes the best use of Agency resources.

For these reasons, this final action is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and finds that this final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is publishing that finding in the **Federal Register**. Under CAA section 307(b)(1), petitions for judicial review of this action must be filed in the D.C. Circuit by September 29, 2023.

[31] *See* 86 FR 23163–64; 81 FR 74585–86.

## List of Subjects

### 40 CFR Part 52

Environmental protection, Administrative practice and procedure, Air pollution control, Incorporation by reference, Intergovernmental relations, Nitrogen oxides, Ozone, Particulate matter, Sulfur dioxide.

### 40 CFR Part 97

Environmental protection, Administrative practice and procedure, Air pollution control, Electric power plants, Nitrogen oxides, Ozone, Particulate matter, Reporting and recordkeeping requirements, Sulfur dioxide.

**Michael S. Regan,**
*Administrator.*

For the reasons stated in the preamble, parts 52 and 97 of title 40 of the Code of Federal Regulations are amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart A—General Provisions

■ 2. Amend § 52.38 by:
■ a. Adding paragraphs (b)(2)(ii)(D) and (b)(2)(iii)(D);
■ b. In paragraph (b)(11)(iii)(D), removing "and" after the semicolon;
■ c. In paragraph (b)(14)(i)(F), removing "and" after the semicolon;
■ d. Revising paragraph (b)(14)(i)(G);
■ e. Adding paragraph (b)(14)(i)(H);
■ f. Revising paragraphs (b)(14)(iii) introductory text and (b)(14)(iii)(B);
■ g. In paragraph (b)(14)(iii)(C), adding "Original" before "Group 2 allowances" each time it appears; and
■ h. In paragraph (b)(16)(ii)(B), adding "and not listed in paragraph (b)(2)(iii)(D)(*2*) of this section" before "and any control period".

The additions and revisions read as follows:

### § 52.38   What are the requirements of the Federal Implementation Plans (FIPs) for the Cross-State Air Pollution Rule (CSAPR) relating to emissions of nitrogen oxides?

\*      \*      \*      \*      \*
   (b) \*   \*   \*
   (2) \*   \*   \*
   (ii) \*   \*   \*
   (D) Notwithstanding any other provision of this part:
   (*1*) While a stay under paragraph (b)(2)(iii)(D)(*1*) of this section is in effect for the sources in a State and Indian

country located within the borders of such State with regard to emissions occurring in a control period in a given year—
   (*i*) The provisions of subpart EEEEE of part 97 of this chapter (as modified in any approval of a SIP revision for such State by the Administrator under paragraph (b)(8) of this section) or the provisions of a SIP revision approved for such State by the Administrator under paragraph (b)(9) of this section, if any, shall apply to the sources in such State and areas of Indian country within the borders of such State subject to the State's SIP authority, and the provisions of subpart EEEEE of part 97 of this chapter shall apply to the sources in areas of Indian country within the borders of such State not subject to the State's SIP authority, with regard to emissions occurring in such control period; and
   (*ii*) Such State shall be deemed to be listed in this paragraph (b)(2)(ii)(D)(*1*) for purposes of this part and part 97 of this chapter.
   (*2*) While a stay under paragraph (b)(2)(iii)(D)(*2*) of this section is in effect for the sources in a State and Indian country located within the borders of such State with regard to emissions occurring in a control period in a given year—
   (*i*) The provisions of subpart EEEEE of part 97 of this chapter (as modified in any approval of a SIP revision for such State by the Administrator under paragraph (b)(8) of this section) or the provisions of a SIP revision approved for such State by the Administrator under paragraph (b)(9) of this section, if any, shall apply to the sources in such State and areas of Indian country within the borders of such State subject to the State's SIP authority, and the provisions of subpart EEEEE of part 97 of this chapter shall apply to the sources in areas of Indian country within the borders of such State not subject to the State's SIP authority, with regard to emissions occurring in such control period; and
   (*ii*) Such State shall be deemed to be listed in this paragraph (b)(2)(ii)(D)(*2*) for purposes of this part and part 97 of this chapter.
   (iii) \* \* \*
   (D) Notwithstanding any other provision of this part:
   (*1*) The effectiveness of paragraph (b)(2)(iii)(A) of this section is stayed for sources in Kentucky and Louisiana and Indian country located within the borders of such States with regard to emissions occurring in 2023 and thereafter. While a stay under this paragraph (b)(2)(iii)(D)(*1*) is in effect for a State, such State shall be deemed not

to be listed in paragraph (b)(2)(iii)(A) of this section for purposes of part 97 of this chapter for a control period after 2022.

(*2*) The effectiveness of paragraph (b)(2)(iii)(B) of this section is stayed for sources in Arkansas, Mississippi, Missouri, and Texas and Indian country located within the borders of such States with regard to emissions occurring in 2023 and thereafter. While a stay under this paragraph (b)(2)(iii)(D)(*2*) is in effect for a State, such State shall be deemed not to be listed in paragraph (b)(2)(iii)(B) of this section for purposes of part 97 of this chapter.

\*    \*    \*    \*    \*

(14) \* \* \*

(i) \* \* \*

(G) The provisions in § 97.526(e) of this chapter or § 97.826(f) of this chapter (concerning the use of CSAPR NO$_X$ Ozone Season Original Group 2 allowances, CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances, or CSAPR NO$_X$ Ozone Season Group 3 allowances to satisfy requirements to hold CSAPR NO$_X$ Ozone Season Group 1 allowances or the use of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances or CSAPR NO$_X$ Ozone Season Group 3 allowances to satisfy requirements to hold CSAPR NO$_X$ Ozone Season Original Group 2 allowances); and

(H) The provisions in §§ 97.806(c), 97.824(a) and (d), and 97.825(a) of this chapter (concerning the situations for which compliance requirements are defined in terms of either CSAPR NO$_X$ Ozone Season Original Group 2 allowances or CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances).

\*    \*    \*    \*    \*

(iii) Notwithstanding any discontinuation pursuant to paragraphs (b)(2)(i)(B), (b)(2)(ii)(B) or (C), (b)(2)(iii)(D)(*1*), or (b)(13)(i) of this section of the applicability of subpart BBBBB, EEEEE, or GGGGG of part 97 of this chapter to the sources in a State and areas of Indian country within the borders of the State subject to the State's SIP authority with regard to emissions occurring in any control period, the following provisions shall continue to apply with regard to all CSAPR NO$_X$ Ozone Season Group 1 allowances, CSAPR NO$_X$ Ozone Season Group 2 allowances, and CSAPR NO$_X$ Ozone Season Group 3 allowances at any time allocated for any control period to any source or other entity in the State and areas of Indian country within the borders of the State subject to the State's SIP authority and shall apply to all

entities, wherever located, that at any time held or hold such allowances:

\*    \*    \*    \*    \*

(B) The provisions of §§ 97.526(d), 97.826(d) and (e), and 97.1026(e) of this chapter (concerning the conversion of unused CSAPR NO$_X$ Ozone Season Group 1 allowances allocated for specified control periods to different amounts of CSAPR NO$_X$ Ozone Season Original Group 2 allowances or CSAPR NO$_X$ Ozone Season Group 3 allowances, the conversion of unused CSAPR NO$_X$ Ozone Season Original Group 2 allowances allocated for specified control periods to different amounts of CSAPR NO$_X$ Ozone Season Group 3 allowances, and the conversion of unused CSAPR NO$_X$ Ozone Season Group 3 allowances allocated for specified control periods to CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances); and

\*    \*    \*    \*    \*

■ 3. Amend § 52.40 by adding paragraph (c)(4) to read as follows:

### § 52.40 What are the requirements of the Federal Implementation Plans (FIPs) relating to ozone season emissions of nitrogen oxides from sources not subject to the CSAPR ozone season trading program?

\*    \*    \*    \*    \*

(c) \* \* \*

(4) Notwithstanding any other provision of this part, the effectiveness of paragraphs (a) and (b), (c)(1) through (3), and (d) through (g) of this section and §§ 52.41, 52.42, 52.43, 52.44, 52.45, and 52.46 is stayed for sources located in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and Texas, including Indian country located within the borders of such States.

\*    \*    \*    \*    \*

### § 52.44   [Amended]

■ 4. Amend § 52.44(j)(2) by removing "June 23, 2023" and adding in its place "December 4, 2023".

### Subpart E—Arkansas

■ 5. Amend § 52.184 by:
■ a. Adding paragraph (a)(6); and
■ b. Redesignating paragraph (b) as paragraph (b)(1) and adding paragraph (b)(2).

The additions read as follows:

### § 52.184   Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

(a) \* \* \*

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (a)(3) of this section is stayed with regard to emissions

occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (a)(2) of this section shall apply with regard to such emissions.

(b) \* \* \*

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (b)(1) of this section is stayed.

### Subpart S—Kentucky

■ 6. Amend § 52.940 by:
■ a. Adding paragraph (b)(6); and
■ b. Redesignating paragraph (c) as paragraph (c)(1) and adding paragraph (c)(2).

The additions read as follows:

### § 52.940   Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

\*    \*    \*    \*    \*

(b) \* \* \*

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (b)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (b)(2) of this section shall apply with regard to such emissions.

(c) \* \* \*

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (c)(1) of this section is stayed.

### Subpart T—Louisiana

■ 7. Amend § 52.984 by:
■ a. Adding paragraph (d)(6); and
■ b. Redesignating paragraph (e) as paragraph (e)(1) and adding paragraph (e)(2).

The additions read as follows:

### § 52.984   Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

\*    \*    \*    \*    \*

(d) \* \* \*

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (d)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (d)(2) of this section shall apply with regard to such emissions.

(e) \* \* \*

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (e)(1) of this section is stayed.

## Subpart Z—Mississippi

■ 8. Amend § 52.1284 by:
■ a. Adding paragraph (a)(6); and
■ b. Redesignating paragraph (b) as paragraph (b)(1) and adding paragraph (b)(2).

The additions read as follows:

### § 52.1284  Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

(a) * * *

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (a)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (a)(2) of this section shall apply with regard to such emissions.

(b) * * *

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (b)(1) of this section is stayed.

## Subpart AA—Missouri

■ 9. Amend § 52.1326 by:
■ a. Adding paragraph (b)(6); and
■ b. Redesignating paragraph (c) as paragraph (c)(1) and adding paragraph (c)(2).

The additions read as follows:

### § 52.1326  Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

*    *    *    *    *

(b) * * *

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (b)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (b)(2) of this section shall apply with regard to such emissions.

(c) * * *

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (c)(1) of this section is stayed.

## Subpart SS—Texas

■ 10. Amend § 52.2283 by:
■ a. Adding paragraph (d)(6); and
■ b. Redesignating paragraph (e) as paragraph (e)(1) and adding paragraph (e)(2).

The additions read as follows:

### § 52.2283  Interstate pollutant transport provisions; What are the FIP requirements for decreases in emissions of nitrogen oxides?

*    *    *    *    *

(d) * * *

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (d)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (d)(2) of this section shall apply with regard to such emissions.

(e) * * *

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (e)(1) of this section is stayed.

## PART 97—FEDERAL NOₓ BUDGET TRADING PROGRAM, CAIR NOₓ AND SO₂ TRADING PROGRAMS, CSAPR NOₓ AND SO₂ TRADING PROGRAMS, AND TEXAS SO₂ TRADING PROGRAM

■ 11. The authority citation for part 97 continues to read as follows:

**Authority:** 42 U.S.C. 7401, 7403, 7410, 7426, 7491, 7601, and 7651, *et seq.*

## Subpart BBBBB—CSAPR NOₓ Ozone Season Group 1 Trading Program

■ 12. Amend § 97.502 by:
■ a. Adding in alphabetical order a definition of "CSAPR NOₓ Ozone Season Group 2 allowance";
■ b. Revising the definition of "CSAPR NOₓ Ozone Season Group 2 allowance"; and
■ c. Adding in alphabetical order a definition of "CSAPR NOₓ Ozone Season Original Group 2 allowance".

The revision and additions read as follows:

### § 97.502  Definitions.

*    *    *    *    *

*CSAPR NOₓ Ozone Season Expanded Group 2 allowance* means a CSAPR NOₓ Ozone Season Group 2 allowance allocated for a control period after 2022 under subpart EEEEE of this part, § 97.526(d), or § 97.1026(e) to a unit in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) or allocated or auctioned for a control period after 2022 in accordance with the provisions of a SIP revision approved for such a State by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter.

*    *    *    *    *

*CSAPR NOₓ Ozone Season Group 2 allowance* means a limited authorization issued and allocated or auctioned by the Administrator under

subpart EEEEE of this part, § 97.526(d), or § 97.1026(e), or by a State or permitting authority under a SIP revision approved by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter, to emit one ton of NOₓ during a control period of the specified calendar year for which the authorization is allocated or auctioned or of any calendar year thereafter under the CSAPR NOₓ Ozone Season Group 2 Trading Program, where each CSAPR NOₓ Ozone Season Group 2 allowance is either a CSAPR NOₓ Ozone Season Original Group 2 allowance or a CSAPR NOₓ Ozone Season Expanded Group 2 allowance.

*    *    *    *    *

*CSAPR NOₓ Ozone Season Original Group 2 allowance* means a CSAPR NOₓ Ozone Season Group 2 allowance other than a CSAPR NOₓ Ozone Season Expanded Group 2 allowance.

*    *    *    *    *

■ 13. Amend § 97.526 by:
■ a. In paragraphs (d)(1)(iii) and (iv) and (d)(2)(i), adding "Original" before "Group 2 allowances" each time it appears;
■ b. Redesignating paragraph (d)(2)(ii) as paragraph (d)(2)(ii)(A);
■ c. In newly redesignated paragraph (d)(2)(ii)(A), removing "After the Administrator" and adding in its place "Except as provided in paragraph (d)(2)(ii)(B) of this section, after the Administrator";
■ d. Adding paragraph (d)(2)(ii)(B);
■ e. Revising paragraph (e) introductory text;
■ f. In paragraph (e)(1), adding "Original" before "Group 2 allowances";
■ g. Redesignating paragraph (e)(2) as paragraph (e)(2)(i);
■ h. In newly redesignated paragraph (e)(2)(i), removing "After the Administrator" and adding in its place "Except as provided in paragraph (e)(2)(ii) of this section, after the Administrator"; and
■ i. Adding paragraph (e)(2)(ii).

The additions and revision read as follows:

### § 97.526  Banking and conversion.

*    *    *    *    *

(d) * * *

(2) * * *

(ii) * * *

(B) After the Administrator has carried out the procedures set forth in paragraph (d)(1) of this section and §§ 97.826(d)(1) and 97.1026(e), upon any determination that would otherwise result in the initial recordation of a given number of CSAPR NOₓ Ozone Season Group 1 allowances in the

compliance account for a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State), the Administrator will not record such CSAPR NO$_X$ Ozone Season Group 1 allowances but instead will allocate and record in such account an amount of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances for the control period in 2023 computed as the quotient, rounded up to the nearest allowance, of such given number of CSAPR NO$_X$ Ozone Season Group 1 allowances divided by the conversion factor determined under paragraph (d)(1)(ii) of this section and further divided by the conversion factor determined under § 97.826(d)(1)(i)(D).

\*      \*      \*      \*      \*

(e) Notwithstanding any other provision of this subpart or any SIP revision approved under § 52.38(b)(4) or (5) of this chapter, CSAPR NO$_X$ Ozone Season Original Group 2 allowances, CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances, or CSAPR NO$_X$ Ozone Season Group 3 allowances may be used to satisfy requirements to hold CSAPR NO$_X$ Ozone Season Group 1 allowances under this subpart as follows, provided that nothing in this paragraph (e) alters the time as of which any such allowance holding requirement must be met or limits any consequence of a failure to timely meet any such allowance holding requirement:

\*      \*      \*      \*      \*

(2) \* \* \*

(ii) After the Administrator has carried out the procedures set forth in paragraph (d)(1) of this section and §§ 97.826(d)(1) and 97.1026(e), the owner or operator of a CSAPR NO$_X$ Ozone Season Group 1 source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) may satisfy a requirement to hold a given number of CSAPR NO$_X$ Ozone Season Group 1 allowances for the control period in 2015 or 2016 by holding instead, in a general account established for this sole purpose, an amount of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances for the control period in 2021 (or any later control period for which the allowance transfer deadline defined in § 97.802 has passed) computed up to the nearest allowance, of such given number of CSAPR NO$_X$ Ozone Season Group 1 allowances divided by the conversion factor determined under paragraph (d)(1)(ii) of this section and

further divided by the conversion factor determined under § 97.826(d)(1)(i)(D).

\*      \*      \*      \*      \*

## Subpart EEEEE—CSAPR NO$_X$ Ozone Season Group 2 Trading Program

■ 14. Amend § 97.802 by:
■ a. In the definition of "Allocate or allocation", removing "§ 97.526(d), and" and adding in its place "§§ 97.526(d), 97.826(d), and 97.1026(e), and";
■ b. In the definition of "Common designated representative's assurance level", paragraph (2), removing "§ 97.526(d)" and adding in its place "§ 97.526(d), § 97.826(d), or § 97.1026(e)";
■ c. Adding in alphabetical order a definition of "CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance";
■ d. Revising the definition of "CSAPR NO$_X$ Ozone Season Group 2 allowance"; and
■ e. Adding in alphabetical order a definition of "CSAPR NO$_X$ Ozone Season Original Group 2 allowance".

The additions and revision read as follows:

### § 97.802   Definitions.

\*      \*      \*      \*      \*

*CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance* means a CSAPR NO$_X$ Ozone Season Group 2 allowance allocated for a control period after 2022 under this subpart, § 97.526(d), or § 97.1026(e) to a unit in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) or allocated or auctioned for a control period after 2022 in accordance with the provisions of a SIP revision approved for such a State by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter.

*CSAPR NO$_X$ Ozone Season Group 2 allowance* means a limited authorization issued and allocated or auctioned by the Administrator under this subpart, § 97.526(d), or § 97.1026(e), or by a State or permitting authority under a SIP revision approved by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter, to emit one ton of NO$_X$ during a control period of the specified calendar year for which the authorization is allocated or auctioned or of any calendar year thereafter under the CSAPR NO$_X$ Ozone Season Group 2 Trading Program, where each CSAPR NO$_X$ Ozone Season Group 2 allowance is either a CSAPR NO$_X$ Ozone Season Original Group 2 allowance or a CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance.

\*      \*      \*      \*      \*

*CSAPR NO$_X$ Ozone Season Original Group 2 allowance* means a CSAPR NO$_X$ Ozone Season Group 2 allowance other than a CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance.

\*      \*      \*      \*      \*

■ 15. Amend § 97.806 by:
■ a. In paragraph (c)(1)(i), adding "for such source" after "available for deduction";
■ b. In paragraph (c)(2)(i) introductory text, adding "for such group" after "available for deduction";
■ c. In paragraph (c)(4), amend the paragraph heading by adding "*and type*" after "*Vintage*"; and
■ d. Adding paragraphs (c)(4)(iii) and (iv).

The additions read as follows:

### § 97.806   Standard requirements.

\*      \*      \*      \*      \*

(c) \* \* \*
(4) \* \* \*
(iii) Except as provided in paragraph (c)(4)(iv) of this section, a CSAPR NO$_X$ Ozone Season Group 2 allowance held for compliance with the requirements under paragraphs (c)(1)(i), (c)(1)(ii)(A), and (c)(2)(i) through (iii) of this section must be a CSAPR NO$_X$ Ozone Season Original Group 2 allowance.

(iv) A CSAPR NO$_X$ Ozone Season Group 2 allowance held for compliance with the requirements under paragraphs (c)(1)(i), (c)(1)(ii)(A), and (c)(2)(i) through (iii) of this section for a source or group of sources in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (or Indian country within the borders of such a State) for a control period after 2022 must be a CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance.

\*      \*      \*      \*      \*

■ 16. Amend § 97.810 by:
■ a. In paragraphs (a)(2)(i) and (ii), removing "through 2022" and adding in its place "and thereafter";
■ b. Adding paragraphs (a)(8)(iv) through (vi) and (a)(9)(iv) through (vi);
■ c. In paragraphs (a)(12)(i) through (iii), (a)(13)(i) and (ii), (a)(20)(i) through (iii), and (b)(2), removing "through 2022" and adding in its place "and thereafter";
■ d. Redesignating paragraph (b)(8) as paragraph (b)(8)(i) and adding paragraph (b)(8)(ii);
■ e. Redesignating paragraph (b)(9) as paragraph (b)(9)(i) and adding paragraph (b)(9)(ii); and
■ f. In paragraphs (b)(12), (b)(13), and (b)(20), removing "through 2022" and adding in its place "and thereafter".

The additions read as follows:

### § 97.810   State NO$_X$ Ozone Season Group 2 trading budgets, new unit set-asides, Indian country new unit set-asides, and variability limits.

(a) \* \* \*

(8) * * *

(iv) The $NO_X$ Ozone Season Group 2 trading budget for 2023 and thereafter is 14,051 tons.

(v) The new unit set-aside for 2023 and thereafter is 283 tons.

(vi) [Reserved]

(9) * * *

(iv) The $NO_X$ Ozone Season Group 2 trading budget for 2023 and thereafter is 14,818 tons.

(v) The new unit set-aside for 2023 and thereafter is 430 tons.

(vi) The Indian country new unit set-aside for 2023 and thereafter is 15 tons.

*       *       *       *       *

(b) * * *

(8) * * *

(ii) The variability limit for Kentucky for 2023 and thereafter is 2,951 tons.

(9) * * *

(ii) The variability limit for Louisiana for 2023 and thereafter is 3,112 tons.

*       *       *       *       *

■ 17. Amend § 97.811 by:
■ a. Revising paragraph (a)(2);
■ b. In paragraphs (d)(1), (d)(2)(i), (d)(2)(ii)(A) through (C), (d)(3)(i) through (iii), (d)(3)(iv)(A) through (C), (d)(3)(v)(B) and (C), (d)(4)(i) through (iii), (d)(5) introductory text, (d)(5)(i) and (ii), and (d)(6), adding "Original" before "Group 2" each time it appears;
■ c. In paragraph (e)(1):
■ i. Adding "and not listed in § 52.38(b)(2)(ii)(D)(2) of this chapter" before "(and Indian country)"; and
■ ii. Adding "Original" before "Group 2" each time it appears; and
■ d. In paragraphs (e)(2)(i), (e)(2)(ii)(A) through (C), (e)(3)(i) through (iii), (e)(3)(iv)(A) through (C), (e)(3)(v)(B) and (C), (e)(4)(i) through (iii), (e)(5) introductory text, (e)(5)(i) and (ii), and (e)(6), adding "Original" before "Group 2" each time it appears.

The revision reads as follows:

**§ 97.811   Timing requirements for CSAPR $NO_X$ Ozone Season Group 2 allowance allocations.**

(a) * * *

(2) Notwithstanding paragraph (a)(1) of this section:

(i) If a unit provided an allocation of CSAPR $NO_X$ Ozone Season Original Group 2 allowances in the applicable notice of data availability issued under paragraph (a)(1) of this section does not operate, starting after 2016, during the control period in two consecutive years, such unit will not be allocated the CSAPR $NO_X$ Ozone Season Original Group 2 allowances provided in such notice for the unit for the control periods in the fifth year after the first such year and in each year after that fifth year.

(ii) If a unit provided an allocation of CSAPR $NO_X$ Ozone Season Expanded Group 2 allowances in the applicable notice of data availability issued under paragraph (a)(1) of this section does not operate, starting after 2020, during the control period in two consecutive years, such unit will not be allocated the CSAPR $NO_X$ Ozone Season Expanded Group 2 allowances provided in such notice for the unit for the control periods in the fifth year after the first such year and in each year after that fifth year.

(iii) All CSAPR $NO_X$ Ozone Season Group 2 allowances that would otherwise have been allocated to a unit described in paragraph (a)(2)(i) or (ii) of this section will be allocated to the new unit set-aside for the State where such unit is located and for the respective years involved. If such unit resumes operation, the Administrator will allocate CSAPR $NO_X$ Ozone Season Group 2 allowances to the unit in accordance with paragraph (b) of this section.

*       *       *       *       *

■ 18. Amend § 97.816 by revising paragraph (c) to read as follows:

**§ 97.816   Certificate of representation.**

*       *       *       *       *

(c) A certificate of representation under this section, § 97.516, or § 97.1016 that complies with the provisions of paragraph (a) of this section except that it contains the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3" in place of the phrase "CSAPR $NO_X$ Ozone Season Group 2" in the required certification statements will be considered a complete certificate of representation under this section, and the certification statements included in such certificate of representation will be interpreted for purposes of this subpart as if the phrase "CSAPR $NO_X$ Ozone Season Group 2" appeared in place of the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3".

■ 19. Amend § 97.818 by redesignating paragraph (f) as paragraph (f)(1) and adding paragraph (f)(2) to read as follows:

**§ 97.818   Delegation by designated representative and alternate designated representative.**

*       *       *       *       *

(f) * * *

(2) A notice of delegation submitted under paragraph (c) of this section or § 97.1018(c) that complies with the provisions of paragraph (c) of this section except that it contains the terms "40 CFR 97.1018(d)" and "40 CFR

97.1018" in place of the terms "40 CFR 97.818(d)" and "40 CFR 97.818", respectively, in the required certification statements will be considered a valid notice of delegation submitted under paragraph (c) of this section, and the certification statements included in such notice of delegation will be interpreted for purposes of this subpart as if the terms "40 CFR 97.818(d)" and "40 CFR 97.818" appeared in place of the terms "40 CFR 97.1018(d)" and "40 CFR 97.1018", respectively.

■ 20. Amend § 97.820 by:
■ a. Revising paragraphs (c)(1)(iv) and (c)(2)(iv); and
■ b. Redesignating paragraph (c)(5)(vi) as paragraph (c)(5)(vi)(A) and adding paragraph (c)(5)(vi)(B).

The revisions and addition read as follows:

**§ 97.820   Establishment of compliance accounts, assurance accounts, and general accounts.**

*       *       *       *       *

(c) * * *

(1) * * *

(iv) An application for a general account under paragraph (c)(1) of this section, § 97.520(c)(1), or § 97.1020(c)(1) that complies with the provisions of paragraph (c)(1) of this section except that it contains the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3" in place of the phrase "CSAPR $NO_X$ Ozone Season Group 2" in the required certification statement will be considered a complete application for a general account under paragraph (c)(1) of this section, and the certification statement included in such application for a general account will be interpreted for purposes of this subpart as if the phrase "CSAPR $NO_X$ Ozone Season Group 2" appeared in place of the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3".

(2) * * *

(iv) A certification statement submitted in accordance with paragraph (c)(2)(ii) of this section that contains the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3" will be interpreted for purposes of this subpart as if the phrase "CSAPR $NO_X$ Ozone Season Group 2" appeared in place of the phrase "TR $NO_X$ Ozone Season" or the phrase "CSAPR $NO_X$ Ozone Season Group 3".

*       *       *       *       *

(5) * * *

(vi) * * *

(B) A notice of delegation submitted under paragraph (c)(5)(iii) of this section or § 97.1020(c)(5)(iii) that complies with the provisions of paragraph (c)(5)(iii) of

this section except that it contains the terms "40 CFR 97.1020(c)(5)(iv)" and "40 CFR 97.1020(c)(5)" in place of the terms "40 CFR 97.820(c)(5)(iv)" and "40 CFR 97.820(c)(5)", respectively, in the required certification statements will be considered a valid notice of delegation submitted under paragraph (c)(5)(iii) of this section, and the certification statements included in such notice of delegation will be interpreted for purposes of this subpart as if the terms "40 CFR 97.820(c)(5)(iv)" and "40 CFR 97.820(c)(5)" appeared in place of the terms "40 CFR 97.1020(c)(5)(iv)" and "40 CFR 97.1020(c)(5)", respectively.

\* \* \* \* \*

■ 21. Amend § 97.821 by:
■ a. Redesignating paragraph (e) as paragraph (e)(1);
■ b. In newly redesignated paragraph (e)(1), adding "Original" before "Group 2 allowances" each time it appears; and
■ c. The adding paragraph (e)(2).
The addition reads as follows:

### § 97.821 Recordation of CSAPR NO$_X$ Ozone Season Group 2 allowance allocations and auction results.

\* \* \* \* \*

(e) \* \* \*
(2) By September 5, 2023, the Administrator will record in each CSAPR NO$_X$ Ozone Season Group 2 source's compliance account the CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances allocated to the CSAPR NO$_X$ Ozone Season Group 2 units at the source in accordance with § 97.811(a) for the control periods in 2023 and 2024.

\* \* \* \* \*

■ 22. Amend § 97.824 by:
■ a. In paragraph (a)(1), removing "and" after the semicolon;
■ b. Adding paragraphs (a)(3) and (4);
■ c. In paragraph (c)(2)(ii), removing "§ 97.526(d), in" and adding in its place "§ 97.526(d), § 97.826(d), or § 97.1026(e), in"; and
■ d. Revising paragraph (d).
The additions and revision read as follows:

### § 97.824 Compliance with CSAPR NO$_X$ Ozone Season Group 2 emissions limitation.

(a) \* \* \*
(3) Are CSAPR NO$_X$ Ozone Season Original Group 2 allowances, if the deductions are not for compliance with the CSAPR NO$_X$ Ozone Season Group 2 emissions limitation of a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) for a control period after 2022; and
(4) Are CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances, if the

deductions are for compliance with the CSAPR NO$_X$ Ozone Season Group 2 emissions limitation of a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) for a control period after 2022.

\* \* \* \* \*

(d) *Deductions for excess emissions.* After making the deductions for compliance under paragraph (b) of this section for a control period in a year in which the CSAPR NO$_X$ Ozone Season Group 2 source has excess emissions, the Administrator will deduct from the source's compliance account an amount of CSAPR NO$_X$ Ozone Season Group 2 allowances, allocated or auctioned for a control period in a prior year or the control period in the year of the excess emissions or in the immediately following year, equal to two times the number of tons of the source's excess emissions, provided that—
(1) The allowances deducted shall be CSAPR NO$_X$ Ozone Season Original Group 2 allowances, if the excess emissions are not from a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) for a control period after 2022; and
(2) The allowances deducted shall be CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances, if the excess emissions are from a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) for a control period after 2022.

\* \* \* \* \*

■ 23. Amend § 97.825 by:
■ a. In paragraph (a)(1), removing "and" after the semicolon; and
■ b. Adding paragraphs (a)(3) and (4).
The additions read as follows:

### § 97.825 Compliance with CSAPR NO$_X$ Ozone Season Group 2 assurance provisions.

(a) \* \* \*
(3) Are CSAPR NO$_X$ Ozone Season Original Group 2 allowances, if the deductions are not for compliance with the CSAPR NO$_X$ Ozone Season Group 2 assurance provisions by the owners and operators of a group of sources in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) for a control period after 2022; and
(4) Are CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances, if the deductions are for compliance with the CSAPR NO$_X$ Ozone Season Group 2 assurance provisions by the owners and operators of a group of sources in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this

chapter (and Indian country within the borders of such a State) for a control period after 2022.

\* \* \* \* \*

■ 24. Amend § 97.826 by:
■ a. In paragraphs (d)(1)(i)(A) and (D), (d)(1)(ii)(A), (d)(1)(iii)(A), (d)(1)(iv)(A) and (B), and (d)(2)(ii), adding "Original" before "Group 2 allowances" each time it appears;
■ b. Redesignating paragraph (d)(3) as paragraph (d)(3)(i);
■ c. In newly redesignated paragraph (d)(3)(i):
■ i. Removing "After the Administrator" and adding in its place "Except as provided in paragraph (d)(3)(ii) of this section, after the Administrator"; and
■ ii. Adding "Original" before "Group 2 allowances" each time it appears;
■ d. Adding paragraph (d)(3)(ii);
■ e. In paragraph (e)(1) introductory text, adding "or (D)" before "of this chapter";
■ f. In paragraphs (e)(1)(i), (e)(1)(ii)(A), (e)(1)(iii) and (iv), (e)(1)(v)(B), and (e)(2), adding "Original" before "Group 2 allowances" each time it appears;
■ g. Revising paragraph (f) introductory text;
■ h. Redesignating paragraph (f)(1) as paragraph (f)(1)(i);
■ i. In newly redesignated paragraph (f)(1)(i):
■ i. Removing "After the Administrator" and adding in its place "Except as provided in paragraph (f)(1)(ii) of this section, after the Administrator"; and
■ ii. Adding "Original" before "Group 2 allowances" each time it appears;
■ j. Adding paragraph (f)(1)(ii); and
■ k. In paragraph (f)(2):
■ i. Adding "and not listed in § 52.38(b)(1)(D)(*2*) of this chapter" before "(and Indian country"; and
■ ii. Adding "Original" before "Group 2 allowances" each time it appears.
The additions and revision read as follows:

### § 97.826 Banking and conversion.

\* \* \* \* \*

(d) \* \* \*
(3) \* \* \*
(ii) After the Administrator has carried out the procedures set forth in paragraph (d)(1) of this section and § 97.1026(e), upon any determination that would otherwise result in the initial recordation of a given number of CSAPR NO$_X$ Ozone Season Original Group 2 allowances in the compliance account for a source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State), the Administrator will not record such CSAPR NO$_X$ Ozone Season Original Group 2 allowances but

instead will allocate and record in such account an amount of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances for the control period in 2023 computed as the quotient, rounded up to the nearest allowance, of such given number of CSAPR NO$_X$ Ozone Season Original Group 2 allowances divided by the conversion factor determined under paragraph (d)(1)(i)(D) of this section.

\* \* \* \* \*

(f) Notwithstanding any other provision of this subpart or any SIP revision approved under § 52.38(b)(8) or (9) of this chapter, CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances or CSAPR NO$_X$ Ozone Season Group 3 allowances may be used to satisfy requirements to hold CSAPR NO$_X$ Ozone Season Original Group 2 allowances under this subpart as follows, provided that nothing in this paragraph (f) alters the time as of which any such allowance holding requirement must be met or limits any consequence of a failure to timely meet any such allowance holding requirement:

(1) \* \* \*

(ii) After the Administrator has carried out the procedures set forth in paragraph (d)(1) of this section and § 97.1026(e), the owner or operator of a CSAPR NO$_X$ Ozone Season Group 2 source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) may satisfy a requirement to hold a given number of CSAPR NO$_X$ Ozone Season Original Group 2 allowances for a control period in 2017 through 2020 by holding instead, in a general account established for this sole purpose, an amount of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances for the control period in 2023 (or any later control period for which the allowance transfer deadline defined in § 97.802 has passed) computed as the quotient, rounded up to the nearest allowance, of such given number of CSAPR NO$_X$ Ozone Season Original Group 2 allowances divided by the conversion factor determined under paragraph (d)(1)(i)(D) of this section.

\* \* \* \* \*

■ 25. Amend § 97.830 by revising paragraph (b)(1) to read as follows:

**§ 97.830  General monitoring, recordkeeping, and reporting requirements.**

\* \* \* \* \*

(b) \* \* \*

(1)(i) May 1, 2017, for a unit other than a unit described in paragraph (b)(1)(ii) of this section;

(ii) May 1, 2023, for a unit that did not commence commercial operation at least 180 calendar days before September 30, 2020 and that is located in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State);

\* \* \* \* \*

■ 26. Amend § 97.834 by revising paragraph (d)(2)(i) to read as follows:

**§ 97.834  Recordkeeping and reporting.**

\* \* \* \* \*

(d) \* \* \*

(2) \* \* \*

(i)(A) The calendar quarter covering May 1, 2017 through June 30, 2017, for a unit other than a unit described in paragraph (d)(2)(i)(B) of this section;

(B) The calendar quarter covering May 1, 2023 through June 30, 2023, for a unit that did not commence commercial operation at least 180 calendar days before September 30, 2020 and that is located in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State);

\* \* \* \* \*

## Subpart GGGGG—CSAPR NO$_X$ Ozone Season Group 3 Trading Program

■ 27. Amend § 97.1002 by:
■ a. Adding in alphabetical order a definition of "CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance";
■ b. Revising the definition of "CSAPR NO$_X$ Ozone Season Group 2 allowance"; and
■ c. Adding in alphabetical order a definition of "CSAPR NO$_X$ Ozone Season Original Group 2 allowance".

The additions and revision read as follows:

**§ 97.1002  Definitions.**

\* \* \* \* \*

*CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance* means a CSAPR NO$_X$ Ozone Season Group 2 allowance allocated for a control period after 2022 under subpart EEEEE of this part, § 97.526(d), or § 97.1026(e) to a unit in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) or allocated or auctioned for a control period after 2022 in accordance with the provisions of a SIP revision approved for such a State by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter.

\* \* \* \* \*

*CSAPR NO$_X$ Ozone Season Group 2 allowance* means a limited authorization issued and allocated or auctioned by the Administrator under subpart EEEEE of this part, § 97.526(d), or § 97.1026(e), or by a State or permitting authority under a SIP revision approved by the Administrator under § 52.38(b)(7), (8), or (9) of this chapter, to emit one ton of NO$_X$ during a control period of the specified calendar year for which the authorization is allocated or auctioned or of any calendar year thereafter under the CSAPR NO$_X$ Ozone Season Group 2 Trading Program, where each CSAPR NO$_X$ Ozone Season Group 2 allowance is either a CSAPR NO$_X$ Ozone Season Original Group 2 allowance or a CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance.

\* \* \* \* \*

*CSAPR NO$_X$ Ozone Season Original Group 2 allowance* means a CSAPR NO$_X$ Ozone Season Group 2 allowance other than a CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance.

\* \* \* \* \*

■ 28. Amend § 97.1026 by:
■ a. Revising the section heading; and
■ b. Adding paragraphs (e) and (f).
The revision and additions read as follows:

**§ 97.1026  Banking and conversion; bank recalibration.**

\* \* \* \* \*

(e) Notwithstanding any other provision of this subpart, by September 18, 2023, the Administrator will temporarily suspend acceptance of CSAPR NO$_X$ Ozone Season Group 3 allowance transfers submitted under § 97.1022 and, before resuming acceptance of such transfers, will take the actions in paragraphs (e)(1) and (2) of this section with regard to every compliance account for a CSAPR NO$_X$ Ozone Season Group 3 source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State):

(1) The Administrator will deduct all CSAPR NO$_X$ Ozone Season Group 3 allowances allocated for the control periods in 2021 and 2022 from each such compliance account.

(2) For each CSAPR NO$_X$ Ozone Season Group 3 allowance deducted from a given source's compliance account under paragraph (e)(1) of this section, the Administrator will allocate to the source and record in the source's compliance account one CSAPR NO$_X$ Ozone Season Expanded Group 2 allowance for the control period in 2023.

(f) Notwithstanding any other provision of this subpart, CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances may be used to satisfy requirements to hold CSAPR NO$_X$ Ozone Season Group 3 allowances under this subpart as follows, provided that nothing in this paragraph (f) alters the time as of which any such allowance

holding requirement must be met or limits any consequence of a failure to timely meet any such allowance holding requirement:

(1) After the Administrator has carried out the procedures set forth in paragraph (e) of this section, the owner or operator of a CSAPR NO$_X$ Ozone Season Group 3 source in a State listed in § 52.38(b)(2)(ii)(D)(*1*) of this chapter (and Indian country within the borders of such a State) may satisfy a requirement to hold a given number of CSAPR NO$_X$ Ozone Season Group 3 allowances for the control period in 2021 or 2022 by holding instead, in a general account established for this sole purpose, an equal amount of CSAPR NO$_X$ Ozone Season Expanded Group 2 allowances for the control period in 2023 (or any later control period for which the allowance transfer deadline defined in § 97.802 has passed).

(2) [Reserved]

■ 29. Amend § 97.1034 by:

■ a. In paragraph (d)(2)(i)(C), removing ''June'' and adding in its place ''September'';

■ b. In paragraph (d)(3), revising the first sentence; and

■ c. In paragraph (d)(4), adding a second sentence.

The revision and addition read as follows:

### § 97.1034    Recordkeeping and reporting.

\*    \*    \*    \*    \*

(d) \*    \*    \*

(3) The designated representative shall submit each quarterly report to the Administrator within 30 days after the end of the calendar quarter covered by the report, except that quarterly reports required for the calendar quarter covering May 1, 2023, through June 30, 2023, shall be submitted by August 4, 2023. \*    \*    \*

(4) \*    \*    \* Notwithstanding the provisions of §§ 75.64(a), 75.73(f)(1), 97.434(d)(2), 97.634(d)(2), and 97.734(d)(2), the deadline for the designated representative of such a unit to submit the quarterly reports required under such additional programs for the calendar quarter covering May 1, 2023, through June 30, 2023, shall be August 4, 2023.

\*    \*    \*    \*    \*

[FR Doc. 2023–14180 Filed 7–28–23; 8:45 am]

**BILLING CODE 6560–50–P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Centers for Medicare & Medicaid Services

### 42 CFR Part 414

**[CMS–5538–N]**

### Medicare Program; Alternative Payment Model (APM) Incentive Payment Advisory for Clinicians— Request for Current Billing Information for Qualifying APM Participants

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), Health and Human Services (HHS).

**ACTION:** Payment advisory.

**SUMMARY:** This advisory is to alert certain clinicians who are Qualifying APM participants (QPs) and eligible to receive an Alternative Payment Model (APM) Incentive Payment that CMS does not have the current billing information needed to disburse the payment. This advisory provides information to these clinicians on how to update their billing information to receive this payment.

**DATES:** Updated billing information must be received no later than September 1, 2023 (see **SUPPLEMENTARY INFORMATION** for details).

**FOR FURTHER INFORMATION CONTACT:** Tanya Dorm, (410) 786–2216.

**SUPPLEMENTARY INFORMATION:**

### I. Background

Under the Medicare Quality Payment Program, an eligible clinician who participates in an Advanced Alternative Payment Model (APM) and meets the applicable payment amount or patient count thresholds for a performance year is a Qualifying APM Participant (QP) for that year. For payment years 2019 through 2024, which corresponds to Performance Periods for 2017 through 2022, an eligible clinician who is a QP for a year based on their performance in a QP Performance Period earns a 5 percent lump sum APM Incentive Payment that is paid in a payment year that occurs 2 years after the QP Performance Period. The amount of the APM Incentive Payment is equal to 5 percent of the estimated aggregate paid amounts for covered professional services furnished by the QP during the calendar year immediately preceding the payment year.

### II. Provisions of the Advisory

The Centers for Medicare & Medicaid Services (CMS) has identified those eligible clinicians who earned an APM Incentive Payment for the calendar year (CY) 2023 payment year based on their QP status for the 2021 QP performance period.

When CMS disbursed the CY 2023 APM Incentive Payments, CMS was unable to verify current Medicare billing information for some QPs and was therefore unable to issue payment. In order to successfully disburse the APM Incentive Payment, CMS is requesting assistance in identifying current Medicare billing information for these QPs in accordance with 42 CFR 414.1450(c)(8).

CMS has compiled a list of QPs we have identified as having unverified billing information. These QPs, and any others who anticipated receiving an APM Incentive Payment but have not, should follow the instructions to provide CMS with updated billing information at the following web address: *https://qpp.cms.gov/resources/ resource-library*.

If you have any questions concerning submission of information through the website, please contact the Quality Payment Program Help Desk at 1–866– 288–8292.

All submissions must be received no later than September 1, 2023. After that time, any claims to an APM Incentive Payment for the CY 2023 payment period based on an eligible clinicians' QP status for the 2021 QP performance period will be forfeited.

All submissions received by September 1, 2023, will be processed together on one date as soon as practicable after September 1, 2023. CMS will not notify the submitter if we are unable to process the APM Incentive Payment based on the billing information submitted for an eligible clinician.

The Administrator of the Centers for Medicare & Medicaid Services (CMS), Chiquita Brooks-LaSure, having reviewed and approved this document, authorizes Evell J. Barco Holland, who is the Federal Register Liaison, to electronically sign this document for purposes of publication in the **Federal Register**.

Dated: July 25, 2023.

**Evell J. Barco Holland,**

*Federal Register Liaison, Centers for Medicare & Medicaid Services.*

[FR Doc. 2023–16140 Filed 7–28–23; 8:45 am]

**BILLING CODE 4120–01–P**